**BLITCH, et ux v. KEITH, et ux.**

Circuit Court, Lake County.

February 3, 1950.

———⊙———

Walter Warren, Leesburg, for plaintiffs.

J. W. & W. B. Hunter, Tavares, for defendants.

T. G. FUTCH, Circuit Judge.

The plaintiffs in this cause filed two suits in chancery seeking immediate injunctive relief against the defendants to the end that plaintiffs might take and remove fruit from two small citrus groves — and the eventual specific performance of two alleged contracts.

One suit involved an alleged contract wherein the sales price was fixed at $40,000 and the other involved an alleged contract wherein the sales price was fixed at $30,000. The two alleged contracts in fact represented one transaction, but on account of defendants' income tax there were two contracts, one for $40,000 signed in December, 1949, and the other for $30,000 signed in January, 1950.

Plaintiffs were to pay $2,000 cash on the $30,000 contract and $4,000 cash on the $40,000 contract. The original $40,000 contract prepared by plaintiffs' attorney contained the following provisions with reference to payment of the balance of the purchase price: ·

. . . the balance of $36,000 to be paid at the rate of 80% of the net amount received for all citrus fruit harvested from the above described

citrus grove each year for 8 years from this date unless said amount is paid before this time; in the event that said 80 per cent of the fruit fails to pay the first parties $36,000 within the next 8 years, the first parties hereby agree that this agreement will be paid in full and no further amounts will become due or payable.

The defendant Charles S. Keith appears to have concurred in this provision, but his wife, the defendant Mary O. Keith, refused to sign the contract with the above quoted provision, whereupon the contract was changed to read as follows:

. . . the balance of $36,000 to be paid at the rate of 80% of the net amount received for all citrus fruit harvested from the above described citrus grove for 8 years from this date unless said amount is paid before this time, in the event that said 80% of the net amount received from the harvest of the citrus fruit fails to pay the balance due of $36,000, together with interest, within the above 8 year period, the first parties agree that they will then accept the sum of 50% of the net amount received from the harvest of the citrus fruits each year thereafter until the balance remaining due shall be paid in full, together with interest at the rate of 4% per annum payable annually and included in the above percent of the proceeds derived from the sale of the citrus fruits.

The contracts in question contained no provision whatsoever for the maintenance of the citrus trees by the purchaser, made no provision for the payment of taxes, made no provision for accounting as to the "net amount received" for citrus fruit harvested. In short, the contracts do little other than purport to give the plaintiffs the property to do with as they please, with no obligation on their part ever to pay for the same.

The evidence shows that while the $40,000 contract was signed by Mrs. Keith, she signed it under protest and duress. It was not signed by her freely and voluntarily in any sense of the word. The defendants were taken to plaintiffs' home and there their signatures to the $40,000 contract were obtained.

The defendants were quite elderly and it is evident from the testimony of the plaintiff T. J. Blitch, Jr., that his conduct with reference to this purported transaction, was such as to put anyone on notice that Charles S. Keith was not competent to engage in any such transaction, and that he did not comprehend what he was doing.

Mr. Blitch is a young man, experienced in the citrus industry, and knows very well that no person in possession of his normal faculties would enter into any such contract in the sale of citrus property. The two parcels involved constitute part of

the homestead of the defendants. Mr. Blitch testified that the fair value of the property involved would be about $30,000 — yet he was willing to sign a contract purporting to pay $70,000 for the property. This in itself shows that the transaction was not entered into by Mr. Blitch in any degree of good faith.

It is true that Mr. Blitch was temporarily expending $6,000, but he was to get the crop now on the grove, which according to his testimony was worth not less than $8,000, and he would be under no obligation to pay anything else or expend any other money until another crop should be harvested, when the defendants would receive 80% of whatever Mr. Blitch chose to call the net from the crop.

The contract is so unconscionable as to preclude any idea of mutuality and would be unenforceable even if executed by the defendant Mary O. Keith freely and voluntarily — and it is somewhat of a surprise that anyone would come into a court of equity asking for the enforcement of any such purported agreement.

Both bills of complaint will be dismissed with prejudice at the cost of the plaintiffs.